Howard Marc Spector
TBA #00785023
SPECTOR & JOHNSON, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380

COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Case No. 18-40820** |
| **Bootique Trends, Inc.** | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

---

First Amended Combined Plan of Reorganization
and Disclosure Statement, as Modified
Filed by the Debtor
Dated: January 29, 2019

---

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED OTHER THAN THOSE SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEY FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. EACH HOLDER OF AN IMPAIRED CLAIM OR EQUITY INTEREST IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

The Debtor, as debtor-in-possession, proposes this First Amended Plan of Reorganization, as Modified under chapter 11 of the Bankruptcy Code.

## ARTICLE 1: DEFINITIONS AND INTERPRETATION

**1.1**    *Definitions.*

The capitalized terms used herein shall have the respective meanings set forth below. Terms defined in the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in this Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(a)    **"Ad Valorem Taxing Authority"** shall mean any governmental entity entitled by law to assess taxes on property based upon the value of such property and to take a statutory Lien senior to Liens filed of record to secure the payment of such taxes and interest accruing thereon.

(b)    **"Administrative Claim"** shall mean a Claim entitled to priority under sections 503[b] and 507[a][1] of the Bankruptcy Code in the Chapter 11 Case of the Debtor.

(c)    **"Allowed"** when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Disputed Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Disputed Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

(d)    **"AMEX"** shall mean American Express.

(e)    **"Ballot"** shall mean the ballot to be used by creditors to cast their votes to accept or reject the Plan.

(f)    **"Balloting Agent"** shall mean the Debtor's counsel, as agent for the Debtor.

(g)    **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(h)    **"Bankruptcy Court"** shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Chapter 11 Case.

(i)    **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

(j)    **"Bar Date"** shall mean a date established by the Bankruptcy Court, by which all claims, other than the claims of governmental authorities, must be filed. The Bar Date for governmental authorities to file claims as set forth in the Notice of Chapter 11 Case filed with the Bankruptcy Court on April 25, 2018, is 180 days after the Order for Relief entered in the Chapter 11 Case, unless another date is established by the Bankruptcy Court.

(k)      "**Business Day**" shall mean any day on which commercial banks are open for business in Dallas, Texas.

(l)      "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

(m)      "**Chapter 11 Case**" shall mean the case of the Debtor commenced under chapter 11 of the Bankruptcy Code on the Petition Date.

(n)      "**Class 4 Distribution Pool**" shall mean an amount equal to $55,000.

(o)      "**Collateral**" shall mean any property of the Debtor subject to a valid, enforceable and non-avoidable Lien to secure the payment of a Claim.

(p)      "**Confirmation Date**" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

(q)      "**Confirmation Hearing**" shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(r)      "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

(s)      "**Contract**" shall mean any executory contract and unexpired lease, as such terms are used within Bankruptcy Code section 365, to which the Debtor was a party as of the Petition Date. The Contracts include the lease of 8100 Melrose Avenue, Los Angeles, California with CormackHill, LP and the lease of Space C1-615 at NorthPark Center, Dallas, Texas.

(t)      "**Cure Payment**" shall be the monetary payments required pursuant to Bankruptcy Code section 365[b][1][A] to cure defaults under Contracts to which the Debtor is a party and which will be assumed pursuant to the Plan. Such Cure Payment shall be conclusively determined and set for each such Contract at the Confirmation Hearing.

(u)      "**Debtor**" shall mean Boutique Trends, Inc.

(v)      "**Disallowed**", when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

(w)      "**Disputed**", when used with respect to a Claim, shall mean a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; and [3] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Disputed Claims.

(x)      "**Disputed Claims Reserve**" shall mean the reserve accounts established pursuant to the Plan for funding Disputed Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Disputed Claims by the entry of a Final Order allowing or disallowing such Disputed Claim[s].

(y)     "**Distribution Date**" shall mean a date, selected by the Reorganized Debtor, as soon as practicable but not later than 90 days after the Effective Date.

(z)     "**Effective Date**" shall mean a Business Day selected by the Debtor or Reorganized Debtor, as the case may be, occurring within 30 days [or such greater number of days, not to exceed 60], of the first Business Day which is 30 days after the Confirmation Date and on which the Confirmation Order is not stayed.

(aa)     "**Estimated Amount**" means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under section 502[c]] of the Bankruptcy Code; [b] determining, pursuant to section 1129[a][11] of the Bankruptcy Code, the feasibility of the Plan for purposes of its Confirmation; or [c] voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018[a].

(bb)     "**Estimation Order**" means an order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against Debtor for any of the purposes provided in the Plan.

(cc)     "**Fee Application**" shall mean an application of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(dd)     "**Fee Claim**" shall mean a Claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(ee)     "**Final Order**" shall mean an order which has been entered and [1] as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing is then pending or [2] as to which and appeal, writ of certiorari, reargument or rehearing has been timely sought, and such order has been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing has expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

(ff)     "**General Unsecured Claim**" shall mean any Claim against the Debtor that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or a Subordinated Claim.

(gg)     "**Interest**" shall mean any right in the Debtor represented by an "equity security", as defined in section 101[16] of the Bankruptcy Code, or any right to acquire such an "equity security".

(hh)     "**IRS**" shall mean the United States Department of Treasury, Internal Revenue Service.

(ii)     "**M&M Claimant**" shall mean a Person alleging a Lien against the Debtor's property or any premises occupied by the Debtor pursuant to Article XVI, Section 37 of the Texas Constitution or Chapter 53 of the Texas Property Code.

(jj)     "**New Common Stock**" means stock in the Debtor representing 100% of the Interests in the Reorganized Debtor as of the Effective Date.

(kk)    "**Objection Deadline**" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Article 9.1 of the Plan.

(ll)    "**Penalty Claims**" shall mean Claims for penalties or punitive damages, including Claims denominated as "interest" which the Bankruptcy Court determines to be punitive in nature.

(mm)   "**Petition Date**" shall mean April 20, 2018.

(nn)    "**Plan**" or "**Plan of Reorganization**" shall mean the plan of repayment proposed within this First Amended Combined Plan of Reorganization and Disclosure Statement, as Modified, either in its present form or as it may hereafter be altered, amended or modified from time to time.

(oo)    "**Plan Secured Note**" shall mean a promissory note made payable in equal monthly installments by the Reorganized Debtor to holders of Allowed Secured Claims with the following terms:

|         | Amortization Term | Payments Begin     | Annual Interest Rate | Note Term |
| ------- | ----------------- | ------------------ | -------------------- | --------- |
| Class 1 | 48 months         | Distribution Date  | 12%                  | 48 months |
| Class 2 | 60 months         | Distribution Date  | 5%                   | 60 months |
| Class 5 | 60 months         | Distribution Date  | 5%                   | 60 months |

Except as otherwise provided in the Plan, the Reorganized Debtor's installment payments shall commence thirty [30] days after the Distribution Date, and shall continue on the same day of each calendar month for a period of months thereafter until the Plan Secured Note is paid in full.

(pp)    "**Priority Tax Claim**" shall mean a Claim of a governmental unit of the kind specified in section 507[a][8] of the Bankruptcy Code, specifically including but not limited to claims for tax years ending on or before the Petition Date.

(qq)    "**Professional Person**" shall mean a person retained or to be compensated pursuant to sections 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

(rr)    "**Pro Rata Share**" shall mean the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Disputed Claims, but not including Disallowed Claims.

(ss)    "**Schedule**" shall mean the appropriate schedule of assets or liabilities filed in the Chapter 11 Case.

(tt)    "**Secured Claim**" shall mean a Claim secured by a Lien on property of the Debtor, which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Collateral that secures payment of such Claim.

(uu)    "**Subordinated Claim**" shall mean any Claim that is either subordinated by contract or by order of the Bankruptcy Court to the right of payment of General Unsecured Claims.

(vv)   **"Tax Liens"** shall mean any statutory Liens securing any Allowed Secured Claims of any Ad Valorem Taxing Authority. Tax Liens shall in all events include Liens that secure the payment of 2018 and prior years' ad valorem taxes.

(ww)   **"Unclassified Claim"** shall mean any Priority Tax Claim or Administrative Claim.

(xx)   **"Unsecured Claim"** shall mean a Claim other than a Secured Claim.

(yy)   **"Unsecured Claim Distribution Fund"** shall mean the aggregate amount of $7,500 per quarter.

(zz)   **"Voting Deadline"** shall mean the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Balloting Agent.

### 1.2   *Interpretation.*

Unless otherwise specified, each references in the Plan to a section, article or exhibit refers to the respective section in, article of, or exhibit to the Plan, as they may be amended, waived or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

### 1.3   *Reorganized Debtor.*

The Plan shall be liberally construed for the benefit of the Debtor and Reorganized Debtor regarding the interchangeableness of the term *"Debtor"* with the term *"Reorganized Debtor"* and other instances of the use *"Reorganized".*

## ARTICLE 2: CLASSIFICATION OF CLAIMS

### 2.1   *Claims Classified.*

For purposes of reorganization, voting and all confirmation matters, except as otherwise provided herein, all Claims [except for Administrative Claims and Priority Tax Claims] shall be classified as set forth in this Article 2 of the Plan.

### 2.2   *Administrative Claims and Priority Tax Claims.*

Administrative Claims and Priority Tax Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as Unclassified Claims on the terms set forth in Article 5 of the Plan.

### 2.3   *Claims.*

The Plan classifies the Claims against the Debtor as follows:

### Secured Claims

Class 1:          Any Allowed Secured Claims of Ad Valorem Taxing Authorities.

Class 2:          The Allowed Secured Claim of AMEX.

| Class 3: | The Allowed Secured Claim of Leslie's Closet. |
| Class 4A – 4Z | The Allowed Secured Claims of M&M Claimants. |
| Class 5A – 5Z: | Any Allowed Secured Claims not otherwise classified. |

### Unsecured Claims

| Class 6 | Any Allowed General Unsecured Claims |
| Class 7: | Any Allowed Subordinated Claims. |

### Interests

| Class 8: | Interests in the Debtor |

### ARTICLE 3: IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

**3.1     *Impaired Classes of Claims and Interests.***

All classes of Claims and Interests are impaired under the Plan.

**3.2     *Impairment Controversies.***

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

### ARTICLE 4: PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

**4.1     *Treatment of Claims.***

The classes of Claims against the Debtor shall be treated under the Plan as follows:

### *Secured Claims*

[a]     *Class 1 – Any Allowed Secured Claims of Ad Valorem Taxing Authorities*. Each holder of an Allowed Secured Claim in Class 1 shall receive, on or before the Distribution Date, a Plan Secured Note in the amount of the balance of its Allowed Secured Claim (which shall include interest from the Petition to the Effective Date under 11 U.S.C. §§ 506(b) and 511). At the sole discretion of the Debtor, the Debtor may at any time after the Effective Date prepay any or all Allowed Secured Claims in Class 1. Notwithstanding the foregoing, upon sale of the Collateral securing an Allowed Class 1 Claim, such Allowed Class 1 Claim shall be paid in Cash, in full.  All Ad Valorem Taxing Authorities shall retain their Tax Liens to secure the payments due hereunder.

[b]     *Class 2 – The Allowed Secured Claims of AMEX*.  On the Distribution Date, AMEX shall receive, in full and final satisfaction of its Class 2 Allowed Secured Claim, a Plan Secured Note in the amount of its Allowed Secured Claim.  AMEX shall retain its Liens as they existed on the Petition Date to secure the Plan Secured Note.

[c]     *Class 3 – The Allowed Secured Claims of Leslie's Closet*.  On the Distribution Date, Leslie's Closet shall receive, in full and final satisfaction of its Class 3 Allowed Secured Claim, the New Common Stock of the Debtor.

[d]     *Class 4A through 4Z –Any Allowed Secured Claims of M&M Claimants*.  Each holder of a Allowed Secured Claim of an M&M Claimant against the Debtor , shall receive on the Distribution Date in full and final satisfaction of its Class 4 Allowed Secured Claim at the Debtor's option, either [i] a one time payment in an amount equal to such holder's Pro Rata Share of the Class 4 Distribution Pool, or [ii] the surrender to such holder of all Collateral securing such Allowed Secured Class 4 Claim in accordance with *In re Sandy Ridge Development Corp*, 881 F.2d 1346 [5th Cir. 1989].  Any amount of a holder's Allowed Class 4 Claim not paid from the Class 4 Distribution Pool shall constitute a deficiency claim and shall be treated as a General Unsecured Claim.  Holders of Allowed Class 4 Claims receiving the treatment specified in [i] above shall not retain their Liens under this Plan.  Rather within ten (10) days of receipt of payment from the Class 4 Distribution Pool, the M & M Claimant shall file in the deed records of the applicable county(ies) a withdrawal or release of all asserted Liens and Claims against the Debtor's property or any premises occupied by the Debtor. To the extent that any M & M Claimant fails to file a release of lien, the Debtor may seek additional relief including an order compelling compliance and shall be entitled to fees and costs associated with such enforcement.  For purposes of this case, each holder of an Allowed Claim in Class 4 shall be separately classified into a subclass [*e.g.*, 4A, 4B].

[e]     *Class 5A through 5Z –Any Allowed Secured Claims not Otherwise Classified*.  Each holder of a Allowed Secured Claim against the Debtor, other than those classified in Class 1, Class 2 , Class 3, or Class 4, shall receive on the Distribution Date in full and final satisfaction of its Class 5 Allowed Secured Claim at the Debtor's option, either [i] payment pursuant to the agreements between such holder and the Debtor; [ii] a Plan Secured Note in the amount of its Allowed Secured Claim [in which case, the holder shall retain its Liens as they existed on the Petition Date to secure the Plan Secured Note], or [iii] the surrender to such holder of all Collateral securing such Allowed Secured Class 5 Claim in accordance with *In re Sandy Ridge Development Corp*, 881 F.2d 1346 [5th Cir. 1989], in which case such Allowed Class 5 Claim shall be deemed paid in full and fully satisfied and any deficiency thereon shall be treated as a General Unsecured Claim.  For purposes of this case, each holder of an Allowed Claim in Class 5 shall be separately classified into a subclass [*e.g.*, 5A, 5B].

[f]     Notwithstanding the foregoing treatment specified above, the Debtor may, at its sole option, provide any holder of a Class 1 Claim, Class 2 Claim, Class 3 Claim, Class 4 Claim or Class 5 Claim, [i] treatment as provided under section 1124[2] or [3] of the Bankruptcy Code, with the Cash payments required by section 1124[2][A] and [C] of the Bankruptcy Code being made on the Distribution Date; or [ii] such holder's Collateral.  If such holder of an Allowed Secured Claim against the Debtor receives treatment as provided in [ii] above, such holder shall retain any Liens securing the Allowed Secured Claim until paid in full.

[g]     Notwithstanding the foregoing, the Debtor and any holder of a Allowed Secured Claim may agree to any alternate treatment of such Secured Claim, which treatment shall include preservation of such holder's Lien; provided, however, that such treatment shall not provide a return to such holder of an amount having a present value in excess of the amount of such holder's Allowed Secured Claim.  Each such agreement shall be presented to the Bankruptcy Court before or within 90 days after the Effective Date and shall not materially and adversely impact the treatment of any other creditor under the Plan.

*Unsecured Claims*

[h]     *Class 6 – Any Allowed General Unsecured Claims.* On a quarterly basis for a period of 5 years following the Effective Date, each holder of an Allowed General Unsecured Non-Insider Claim shall receive a Cash payment in the amount of such holder's Pro Rata Share of the amount available in the Unsecured Claim Distribution Fund for each such month. Quarterly payments shall be made on the first day of each month of January, April, July, and October in the 5 year period following the Effective Date.

[i]     *Class 7 – Any Allowed Subordinated Claims.* No distribution shall be made to any Allowed Subordinated Claim.

*Interests in the Debtor*

[j]     *Class 8 – Interests in the Debtor.* On the Effective Date of the Plan, Allowed Interests in the Debtor shall be cancelled. The Debtor shall issue new Interests in the Debtor in accordance with Article 4.1[c] and 7.8 of this Plan.

### ARTICLE 5: PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1**     *Treatment of Administrative Claims.*

The holder of an Administrative Claim [including Fee Claims] incurred before the Effective Date, other than those of an Ad Valorem Taxing Authority, shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a Fee Application within 60 days after the Effective Date. Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred and discharged. Each holder of an Allowed Administrative Claim against the Debtor shall receive on the Distribution Date the amount of such holder's Allowed Claim in one Cash payment.

**5.2**     *Treatment of Priority Tax Claims.*

Each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim a series of equal deferred Cash payments in an amount necessary to amortize the Allowed Priority Tax Claim over a 48 month period with interest at the annual rate of 5% per annum as to Claims of the IRS and 6.5% per annum as to Claims of the Texas Comptroller and the Texas Workforce Commission with such payments beginning on the 1st day of the month in which the Distribution Date falls, and continuing to be made on the same day of each consecutive month for an additional 47 months.

With respect to the claims of the IRS,

•     If the Debtor fails to make any Plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the IRS within 10 days of the due date of such deposit or payment, or if the Debtor fails to file any required federal or state tax return by the due date

of such return, then the IRS may notify the Debtor in writing that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the IRS of the right to declare that the Debtor is in default.

• If the Debtor does not cure the default within 14 days of such notice, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately, and the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default, the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until default under the Plan.

• All payments will be sent to: IRS, Attention: Leo Carey, 1100 Commerce Street, Mail Code 5024 DAL, Dallas, Texas 75242.

• The IRS shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The IRS may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the IRS; but the IRS shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

With respect to the Claims of the Texas Comptroller or the Texas Workforce Commission, in the event that the Texas Comptroller or the Texas Workforce Commission asserts that a default under the Plan has occurred, Texas Comptroller or the Texas Workforce Commission must provide the Reorganized Debtor with written notice ["Texas Governmental Notice"] of such default to Debtor's counsel, Howard Marc Spector, [via facsimile to (214) 237-3380 and via email to HMSpector@spectorjohnson.com] with a copy to Debtor [via USPS mail, certified return receipt requested, overnight delivery, or same day service] addressed to Bootique Trends, Inc. at 5851 Legacy Circle, Suite 600, Plano, TX  75024].
If the default asserted in the Texas Governmental Notice remains uncured on the fifteenth [15th] day from the date on which such Texas Governmental Notice is sent, the Texas Comptroller or the Texas Workforce Commission, as the case may be, may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 5.3    *Additional Provisions Regarding Administrative Tax Claims.*

To the extent any post-Petition Date taxes are due, a Governmental Unit as of the Effective Date of the Plan, they shall be paid in full on the Effective Date of the Plan, they shall be paid in full on the Effective Date in accordance with § 1129(a)(9)(A).  Any post-petition taxes coming due subsequent to the Effective Date of the Plan shall be paid when due under applicable non-bankruptcy law.  A failure to pay taxes coming due to a Governmental Unit after the Effective Date,

and a Governmental Unit's rights with regard to such failure, is a matter of and shall be governed by applicable non-bankruptcy law.

## ARTICLE 6: ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    *Classes Entitled to Vote.*

Classes 1, 2, 3, 4, 5, and 6 shall be entitled to vote separately to accept or reject the Plan as provided in applicable Bankruptcy Court orders and the Bankruptcy Code. Classes 7 and 8 are not entitled to vote as they are deemed to reject the Plan.

### 6.2    *Class Acceptance Requirement.*

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such class that have voted on the Plan.

### 6.3    *Cramdown.*

If any class of Claims shall fail to accept the Plan in accordance with section 1126[c] of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with section 1129[b] of the Bankruptcy Code. In the event that confirmation is requested under section 1129[b] of the Bankruptcy Code, the Debtor reserves the right to amend or otherwise modify the Plan to eliminate distributions to holders of any Claims junior to any class of Claims that is impaired under and has not accepted the Plan in accordance with section 1129[b][2] of the Bankruptcy Code.

## ARTICLE 7: INFORMATION ABOUT THE DEBTOR AND MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1    *Pre-Petition Background.*

The Debtor operates two retail shoe and clothing boutiques in NorthPark Center in Dallas, Texas and Fred Segal, in Los Angeles, California. These stores are the surviving stores of TX Gregory's LV and NP Gregory's, LLC, (the "**Former Debtors**") which themselves were debtors in chapter 11 bankruptcy proceedings pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (Case numbers 14-33232 and 14-33240). The Former Debtors operated similar stores in Houston, Atlanta, and Las Vegas. Under the plan of reorganization confirmed in the Former Debtors' bankruptcy cases, the Debtor was to become the surviving entity of a merger among the Former Debtors and the Debtor. Accordingly, claims of any Person against either of the Former Debtors are considered as claims against the Debtor in this proceeding.

### 7.2    *Post-Petition Matters.*

The Debtor has obtained use of cash collateral and retained counsel to represent it in the Chapter 11 Case. Creditors are advised to review the pleadings filed with the Bankruptcy Court to ensure that they are fully informed about developments in the Chapter 11 Case.

### 7.3    *Claims Against the Debtor and Projected Distributions.*

The Claims as filed or scheduled by the Debtor in each Class are approximately as follows:

| | |
|---|---|
| Class 1 (ad valorem secured) | $31,000.00 |
| Class 2 (AMEX secured) | $225,000.00 |
| Class 3 (Leslie's Closet) | $120,000.00 |
| Class 4 (M&M Claimants) | $50,000.00 |
| Class 5 (other secured) | $40,000.00 |
| Class 6 (general unsecured) | $792,000.00 |
| Priority Tax Claims | $125,000.00 |

All assets of the Debtor are listed in the Schedules. All assets are secured by a first priority security interest in favor of AMEX and a second priority security interest in favor of Leslie's Closet. The aggregate amount of debt associated with these security interests exceeds $300,000.00.

Based on the Debtor's estimates of the amount of Allowed Claims in each Class, the Debtor expects that holders of Allowed Claims in each Class to receive the following approximate percentage distribution:

| | |
|---|---|
| Class 1 (ad valorem secured as of the Petition Date) | 100% |
| Class 2 (AMEX secured) | 100% |
| Class 3 (Leslie's Closet) | Stock in the Reorganized Debtor |
| Class 4 (M&M Claimants) | 100% |
| Class 5 (other secured) | 100% |
| Class 6 (general unsecured) | 19% |
| Class 7 (subordinated claims) | 0% |
| Class 8 (equity) | 0% |
| Administrative Claims | 100% |
| Priority Tax Claims | 100% |

### 7.4    *Vesting of Assets.*

On the Effective Date, all real and personal property of the estate of the Debtor, including but not limited to all causes of action of the Debtor, shall vest in the Reorganized Debtor; provided, however, that upon any subsequent conversion to a case under chapter 7, all assets vesting in the Reorganized Debtor shall pass to the chapter 7 trustee as property of the chapter 7 estate subject to those Claims, Liens, and encumbrances as Allowed and restructured in the Plan and as specified herein.

Pursuant to 11 U.S.C. § 1123(b)(3)(B), as of the Effective Date any causes of action that are already pending or that are property of the estate of the Debtors, even if not yet filed, including, without limitation all common law tort, statutory tort, statutory claims and contract claims and claims for equitable relief of all kinds and avoidance or recovery actions under 11 U.S.C. § 544, 545, 547, 548, 549, 550, 551 and 553, that are not released as a part of this Plan, shall become property of the Reorganized Debtor. Such Reorganized Debtor shall have the authority to prosecute such causes of action for the benefit of its estate and its creditors. Such Reorganized Debtor shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such causes of action without approval of the Bankruptcy Court. All proceeds of any cause of action received by the Reorganized Debtor as a result of prosecution or settlement of any causes of action or of enforcement of any judgment or order obtained in connection with any cause of action shall be utilized in accordance with the terms of the Plan. Unless a cause of action is released as an express term of this Plan, no cause of action is released by confirmation of this Plan, and confirmation of the Plan shall not have any res judicata or collateral estoppel effect on the Reorganized Debtor's prosecution of any cause of action. Notwithstanding the foregoing, the Debtor has described certain causes of action on Exhibit 1 hereto, which it reserves the right to pursue if the Bankruptcy Court confirms this Plan.

**7.5**    *Disputed Claims.*

[a]    *Establishment of Disputed Claims Reserve.* Notwithstanding any other provision of the Plan, no assets or property shall be distributed under the Plan on account of any Disputed Claim. For all Disputed Claims, the Reorganized Debtor shall establish and hold, distributions payable to the holders of Disputed Claims [each such reserve being herein called a "Disputed Claims Reserve"] with respect to each Priority Tax Claim or Class 1, 2, 4, 5 or 6 for which there exists a Disputed Claim, and shall place in each Disputed Claims Reserve the assets and property to be distributed on account of such Disputed Claims pursuant to the Plan, pending Allowance or Disallowance of such Claim. Pending entry of a Final Order concerning a Disputed Claim, the Reorganized Debtor shall pay into the Disputed Claims Reserve all payments provided for under the Plan pursuant to any Allowed Claim which would have been required to be delivered to the claimant absent a Disputed Claim. Cash held in any Disputed Claims Reserve shall be held in a segregated interest bearing account. To the extent practicable, the Reorganized Debtor may invest the Cash in any Disputed Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[b]    *Determination of Disputed Claims Reserve.* The Bankruptcy Court may, at any time, determine for each Priority Tax Claim or Class 1, 2, 4, 5 or 6 Claim, the amount of assets and property sufficient to fund each Disputed Claims Reserve established with respect to any such class. The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in each class for which a Disputed Claims Reserve has been established. Any claimant holding a Disputed Claim so estimated will have recourse only to undistributed assets and property in the Disputed Claims Reserve for the class in which such Disputed Claim has been placed and not to the Reorganized Debtor or any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[c]      *Return of Assets.* Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Disputed Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the Reorganized Debtor for distribution in accordance with the Plan.

[d]      *Withholding of Taxes.* The Reorganized Debtor may withhold from any assets and property distributed under the Plan any assets and or property that must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

### 7.6    *Estimated Claims.*

Except as otherwise provided herein, the Bankruptcy Court may estimate for purposes of allowance pursuant to section 502[c] of the Bankruptcy Code [i] any Disputed Claim or unliquidated Claim or [ii] any portion or part of any Claim that is itself unliquidated. Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

### 7.7    *Claims on File; No Allowance of Untimely Claims.*

The Debtor is relying on the formal proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal proof of claim shall be deemed to have been filed in this Chapter 11 Case.

### 7.8    *Issuance of New Common Stock.*

On the Effective Date, the Reorganized Debtor will issue New Common Stock subject to, inter alia, the following terms and conditions:

[a]      Authorization.  The current charter of the Debtor shall be amended to authorize the issuance of a total of up to 1,000,000 shares of New Common Stock.

[b]      Par Value.  The New Common Stock shall have a par value of $0.01 per share.

[c]      Rights.  Holders of New Common Stock shall have one vote per share on all matters submitted to a vote of shareholders.  The New Common Stock shall have such rights with respect to dividends, liquidation, and other matters as are set forth in the charter of the Reorganized Debtor and as are otherwise provided by Texas law and this Plan.

### 7.9    *Management of the Debtor.*

After the Effective Date, the officers and directors shall manage the business of the Debtor. Currently, the officers and directors do not draw salary from the Debtor.

### 7.10   *Assumption of Liabilities.*

The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

**7.11**   *Risks to Creditors and Feasibility.*

The Debtor has further prepared an analysis of its projected income and expenses for the two year period following confirmation of the Plan, which is attached hereto as <u>Exhibit 2</u>. This analysis reflects that the Debtor has sufficient cash flow to make the monthly payments called for under the Plan to holders of Allowed Claims.   Nevertheless, the Plan is subject to a number of material risks, including those enumerated below. Prior to deciding how to vote on the Plan, each holder of an impaired Claim should carefully consider all of the information contained herein, especially the factors mentioned in the following paragraphs:

[a]   Forward-Looking Information May Prove Inaccurate  –  This *Combined Plan and Disclosure Statement* contains various forward-looking statements and information that are based on the Debtor's beliefs as well as assumptions made by and information currently available to the Debtor. FORWARD-LOOKING STATEMENTS ARE NOT GUARANTEES OF THE REORGANIZED DEBTOR'S FUTURE PERFORMANCE.  THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE REORGANIZED DEBTOR'S ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED, AND THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN.  THESE RISKS, UNCERTAINTIES, AND FACTORS MAY INCLUDE THE FOLLOWING:

- The Debtor's ability to confirm and consummate the Plan;
- The potential that the Debtor may need to pursue an alternative transaction if the Plan is not confirmed;
- The Debtor's ability to reduce its overall financial leverage;
- The potential adverse impact of the Chapter 11 Case on the Debtor's operations, management, and employees;
- The risks associated with operating the Debtor's business during the Chapter 11 Case;
- Customer responses to the Chapter 11 Case;
- General economic, business, and market conditions;
- A decline in the Debtor's market share due to competition or price pressure by customers;
- The Debtor's ability to implement cost reduction initiatives in a timely manner;
- Financial conditions of the Debtor's customers; and
- The Debtor's limited access to capital resources;

[b]   Dependence on Key Individuals – The Debtor is dependent on its ability to retain the services of current management. Their loss could have a material adverse effect on the Debtor.

[c]   Certain Risks of Non-Confirmation – There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the confirmation of the Plan is not likely to be followed by a

liquidation or a need for further financial reorganization and that the value of the distributions to non-accepting creditors and interest holders will not be less than the value of the distributions that such creditors and interest holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Although the Debtor believes that these requirements will be satisfied, there can be no assurance that the Bankruptcy Court will concur. The confirmation and consummation of the Plan are also subject to certain other conditions, which are described herein. If the Plan were not to be confirmed and consummated, it is unclear whether a reorganization comparable to the reorganization contemplated hereby could be implemented in a timely manner and, if so, what distributions holders of Claims ultimately would receive with respect to its Claims. Moreover, if an alternative reorganization could not be implemented in a timely manner, it is possible the that Debtor would have to liquidate its assets, in which case it is likely the holders of Allowed Claims would receive less than they would have received pursuant to the Plan.

**7.12   *Other Information Relevant to Accepting or Rejecting the Plan.***

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, or a case under any other chapter, Section 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect upon claims against a debtor that arose prior to the bankruptcy filing. Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize for the benefit of the debtor and its creditors. A plan of reorganization sets forth the means for satisfying all claims against a debtor. Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade credit relationship, but may also arise from other contractual arrangements or from alleged torts.

After a plan of reorganization has been filed with a bankruptcy court, it must be accepted by holders of impaired claims and interests against the debtor. Section 1125 of the Bankruptcy Code requires that a plan debtor fully disclose sufficient information about the debtor, its assets and the plan of reorganization to creditors before acceptances of that plan may be solicited. This Combined Plan and Disclosure Statement is being provided to satisfy such requirements of Section 1125 of the Bankruptcy Code.

The Bankruptcy Code provides that creditors and interests are to be grouped into "classes" under a plan and that they are to vote to accept or reject a plan by class. While courts have disagreed on the proper method to be used in classifying creditors, a general rule of thumb is that creditors with similar legal rights are placed together in the same class. For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding subordinated unsecured claims might be placed in a separate class. Generally, each secured creditor will be placed in a class by itself because each such creditor usually has a lien on distinct property and therefore has distinct legal rights.

The Bankruptcy Code does not require that each claimant vote in favor of the Plan for the Bankruptcy Court to confirm the plan. Rather, the plan must be accepted by each class of claimants [subject to an exception discussed below]. A class of claimants accepts the plan if, of the claimants

in the class who actually vote on the plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the plan. For example, if a hypothetical class has ten creditors that vote and the total dollar amount of those ten creditors' claims is $1,000,000, then for such class to have accepted the plan, six or more of those creditors must have voted to accept the plan [a simple majority], and the claims of the creditors voting to accept the plan must total at least $666,667 [a two-thirds majority].

The Bankruptcy Court may confirm a plan even though fewer than all classes of claims or interests accept it. In this instance, if all classes of Claims do not accept the Plan, the Debtor are entitled to request that the Bankruptcy Court confirm the plan pursuant to the "cramdown" provisions of Section 1129[b] of the Bankruptcy Code. These "cramdown" provisions permit the plan to be confirmed over the dissenting votes of classes of claims or interests if the Bankruptcy Court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of interests.

Independent of the acceptance of the plan as described above, to confirm the plan, the Bankruptcy Court must determine that the requirements of Section 1129[a] of the Bankruptcy Code have been satisfied.

The Bankruptcy Court has set a hearing on confirmation of the Plan for **January 29, 2019, at 9:30 a.m. Central Time** in the courtroom of the **Honorable Brenda T. Rhoades, United States Bankruptcy Court, Eastern District of Texas, 660 North Central Expressway, Suite 300B Plano, TX 75074.** The confirmation hearing may be adjourned by the Bankruptcy Court from time to time without further notice except for an announcement made in open court at the confirmation hearing or any continued hearing thereon. Objections to confirmation must be filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules on or before **January 25, 2019.**

Section 1128[b] of the Bankruptcy Code provides that any party in interest may object, in writing, to confirmation of a plan of reorganization or to final approval of a disclosure statement. Written objections to confirmation of the Plan or the disclosure statement, if any, must be filed with the Bankruptcy Court *and* a copy of such written objections must be *actually* received by counsel for the Debtor at the following address on or before **January 25, 2019**:

SPECTOR & JOHNSON, PLLC
12770 COIT ROAD
BANNER PLACE, SUITE 1100
DALLAS, TEXAS 75251

**7.13** *Voting Procedures.*

All Classes are entitled to vote on the Plan, except Class 7, which is deemed to reject the Plan.

**IT IS IMPORTANT THAT HOLDERS OF CLAIMS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN**. All known holders of Claims entitled to vote on the Plan have

been sent a ballot, together with instructions for voting.  In voting for or against the Plan, use only the ballot sent to you.

**THE VOTING DEADLINE IS <u>JANUARY 25, 2019</u>.  ALL BALLOTS MUST BE RETURNED SO THAT THEY ARE <u>*RECEIVED*</u> BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE.  THE NAME AND ADDRESS OF THE BALLOTING AGENT IS SET FORTH ON THE BALLOT.**

## ARTICLE 8: <u>PROVISIONS GOVERNING DISTRIBUTIONS</u>

**8.1      *Distributions.***

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Distribution Date, as funds are available, or as the Bankruptcy Court may order.

**8.2      *Delivery of Distributions.***

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. After the first anniversary of the Effective Date, all unclaimed property shall revert to the Reorganized Debtor or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

**8.3      *Time Bar to Cash Payments.***

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE 9:
## PROCEDURES FOR RESOLVING AND TREATING
## <u>DISPUTED CLAIMS UNDER THE PLAN</u>

**9.1      *Objection Deadline.***

As soon as practicable, but in no event later than 60 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Notwithstanding the foregoing sentence, as to any Claim that is filed after the Effective Date, an

objection to such Claim shall be filed on or before 60 days after the date on which such Claim is filed.

### 9.2    *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Payments and distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

### ARTICLE 10:
### PROVISIONS GOVERNING EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES UNDER THE PLAN

### 10.1    *Assumption of Contracts.*

The Plan constitutes a motion by the Debtor to assume all Contracts. Except as set forth in such motion, as to assumed Contracts, [a] no cure of such Contracts pursuant to Bankruptcy Code section 365[b][1][A] is necessary other than the Cure Payments; [b] no Bankruptcy Code section 365[b][1][B] compensation is owing or shall be owing upon the assumption of such Contracts; [c] confirmation of this Plan shall be deemed [i] adequate assurance of prompt cure of any default under such Contracts solely based upon the Debtor's obligation in the Plan to make the Cure Payments, [ii] adequate assurance of future performance under such Contracts, and [iii] consent by the party to such Executory Contract to the assignment or sublease of the property subject to the Executory Contract to any third party disclosed at the Confirmation Hearing.

### 10.2    *Bar to Rejection Damages.*

If the rejection of a Contract by the Debtor pursuant to this Plan results in damages to the other party or parties to such Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor or its respective property or its agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before sixty [60] days following the Effective Date.

### 10.3    *Insurance Policies.*

Notwithstanding anything in the Plan or Sections 10.1 and 10.2 of the Plan, all insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date.  All payments upon such policies are current; no cure payments are necessary.

### ARTICLE 11: RETENTION OF JURISDICTION

### 11.1    *Scope of Jurisdiction.*

Pursuant to sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Chapter 11 Case, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Chapter 11 Case and the Plan. Without

limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of the Plan:

[a] to modify the Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;

[b] to enforce and interpret the terms and conditions of the Plan;

[c] to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Reorganized Debtor;

[d] to enter an order concluding and terminating the Chapter 11 Case;

[e] to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of the Plan, including the adjustment of the date[s] of performance under the Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan may be substantially realized thereby;

[f] to approve all Fee Claims;

[g] to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to the Plan or the transactions contemplated hereby against Debtor;

[h] to determine any and all applications pending on confirmation for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;

[i] to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

[j] to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

[k] to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

[l] to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;

[m] to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

[n] to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

[o] to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

[p] to enter Estimation Orders;

[q]      to determine claims under section 506[c] of the Bankruptcy Code against the holders of any Allowed Secured Claim.

## 11.2   *Failure of the Bankruptcy Court to Exercise Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 Case, including the matters set forth in Section 11.1 of the Plan, this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 12: MISCELLANEOUS PROVISIONS

### 12.1   *Setoff Rights.*

In the event that the Debtor has a claim of any nature whatsoever, including but not limited to a claim under section 506[c] of the Bankruptcy Code, against the holder of a Claim, the Debtor may, but is not required to, assert a setoff against the Claim [and any payments or other distributions to be made in respect of such Claim hereunder], subject to the provisions of section 553 of the Bankruptcy Code. Neither the failure to engage in such setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any claim that the Debtor may have against the holder of a Claim.

### 12.2   *Discharge.*

Except as otherwise provided in the Plan, entry of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan. As provided in section 524 of the Bankruptcy Code, the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of its property, to the extent it relates to a Claim discharged.

### 12.3   *Injunctions.*

The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein. Without limiting the generality of the foregoing, such injunction shall include an absolute prohibition from collecting Claims in any manner other than as provided for in the Plan. Notwithstanding the foregoing, no such injunction shall impair or abridge the setoff rights of the holder of an Allowed Claim.

### 12.4   *Pre-Petition Date Lawsuits/Insurance.*

On the Effective Date, all pre-Petition Date lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim shall be deemed dismissed with prejudice as to the Reorganized Debtor; provided however, if the appeal of any such matter is pending as of the Confirmation Date, the Claim shall be determined by the appellate court[s] in which such case is pending; and provided further that if such case is reversed or remanded to the trial court, the Claim shall be asserted and finally determined by the Bankruptcy Court.

Dismissals of proceedings provided herein shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal with prejudice of such actions.

Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan.

## 12.5   *De Minimis Distributions.*

No distribution of less than $25 shall be made to any holder of an Allowed Claim. Such undistributed amount will be retained by Reorganized Debtor.

## 12.6   *Responsible Party Injunction*

THE CONFIRMATION ORDER SHALL CONSTITUTE AND PROVIDE FOR A TEMPORARY INJUNCTION , AS OF THE EFFECTIVE DATE, ENJOINING THE HOLDER OF THE CLASS 2 CLAIM OR ANY PRIORITY TAX CLAIMS, SAVE AND EXCEPT THOSE OF THE  STATE OF TEXAS OR ITS AGENCIES, FROM COLLECTING AMOUNTS OWED BY THE DEBTOR FROM ANY AFFILIATE, RESPONSIBLE PERSON, GUARANTOR, OFFICER OR DIRECTOR OF THE DEBTOR THAT OTHERWISE WOULD BE LIABLE TO SUCH HOLDER FOR PAYMENT OF SUCH AMOUNTS FOR ANY REASON WHATSOEVER, SO LONG AS THE REORGANIZED DEBTOR IS NOT IN DEFAULT OF THE PAYMENT TERMS ATTENDANT TO SUCH CLAIMS UNDER THIS PLAN.

## 12.7   *Payment of Statutory Fees.*

The Reorganized Debtor shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930[a][6] until the clerk of the Bankruptcy Court closes the case. The Reorganized Debtor shall file with the Bankruptcy Court and serve upon the U.S. Trustee a quarterly financial report for each quarter [or portion thereof] that the case remains open in a format prescribed by the U.S. Trustee.

**12.8**   *Post-Effective Date Fees and Expenses of Professional Persons.*

Except as provided in the Plan, after the Effective Date the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Debtor, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided further that the Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so. In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout the Chapter 11 Case.

**12.9**   *Bankruptcy Restrictions.*

From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, sections 363 or 364]. The Reorganized Debtor may conduct its affairs in such manner as is consistent with individuals not in bankruptcy without the need of seeking Bankruptcy Court approval. No monthly operating reports shall be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such quarterly financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

**12.10**   *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtor, or any other Person, [ii] to prejudice in any manner the rights of the Debtor, or any other Person, or [iii] to constitute any admission by the Debtor, or any other Person.

**12.11**   *Governing Law.*

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Case, except as may otherwise be provided in such agreements, documents and instruments.

**12.12**   *Modification of Plan.*

Modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that [i] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, [ii] the Bankruptcy Court, after

notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 12.13   *Creditor Defaults.*

Any act or omission by a Creditor in contravention of a provision of the Plan shall be deemed an event of default under the Plan. In the event the Debtor asserts that a holder of an Allowed Claim is in default under the Plan, the Debtor must provide such holder of an Allowed Claim with written notice ["Notice to Creditor"] of such default via overnight mail or similar same-day or express delivery to the address of such holder as set forth on the proof[s] of Claim filed by such holder [or at the last known address of such a holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address]. If the default asserted in the Notice to Creditor remains uncured on the 15th day from the date on which such Notice to Creditor is sent, the Debtor may pursue any rights or remedies it may have under applicable bankruptcy or non-bankruptcy law, whether state, federal or otherwise, including seeking to hold the defaulting party in contempt of the Confirmation Order. If such Creditor is found to be in default under the Plan, it may, at the Bankruptcy Court's discretion, be ordered to pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a Creditor, the Bankruptcy Court may [a] designate a party to appear, or designate the Debtor to sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70, or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed. Upon the payment in full of any Allowed Secured Claim, other than those of an Ad Valorem Tax Authority, as provided under the Plan, the holder of such Allowed Secured Claim shall execute, deliver and file a release of all liens and security interests securing its Allowed Secured Claim within 45 days of such payment.

### 12.14   *Debtor's Default.*

Except as otherwise provided in the Plan, in the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred, such creditor must provide the Reorganized Debtor with written notice ["Notice"] of such default to Debtor's counsel, via overnight mail or similar same-day or express delivery. If the default asserted in the Notice remains uncured on the sixtieth [60[th]] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 12.15   *Severability.*

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH THIS SECTION 12.14 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY CLAIM AFFECTED BY SUCH PROVISION. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT [1] LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR [2] REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

### 12.16   *Substantial Consummation/Closing the Chapter 11 Case.*

Upon initiating payments or distributions on Allowed Claims required to be paid pursuant to Article 5, the Plan shall be deemed substantially consummated and, upon motion by the Reorganized Debtor, the Chapter 11 Case shall be closed. Upon such motion, the Bankruptcy Court shall issue a final decree containing such provisions as may be required.

### 12.17   *Integration Clause.*

The Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein.

### 12.18   *Liquidation Analysis.*

All assets are secured by a first priority security interest in favor of AMEX and a junior lien in favor of Leslie's Closet. The aggregate amount of debt associated with AMEX's security interests exceeded $270,000.00 as of the Petition Date. AMEX and Leslie's Closet assert an interest in all, or substantially all, of the Debtor's assets, and the Debtor is not currently aware of any defenses it has to the obligations owed, nor is it aware of any basis upon which it can challenge the security interests. Similarly, the Debtor attributes less than $100,000.00 of net value to avoidance recoveries as it believes that most, if not all, of the transactions disclosed in response to Questions 3b and 3c on the Debtor's Statement of Financial Affairs represent "ordinary course" transactions or are supported by a contemporaneous exchange of value or subsequent new value provided by the recipient of the potentially avoidable transfer. Likewise, the Debtor is not aware of any litigation claims it may have against third parties and therefore attributes no additional value to recoveries attendant to such claims. Although distributions under the Plan are contingent on the Debtor's performance, absent this Plan all of the Debtor's assets would be seized by its secured creditors, and the Debtor would be unable to operate it business and unable to generate income until the claims of the secured creditors are paid in full. In such instance, the equity interests in the Debtor would have no value, and could generate no revenue from sale. Absent this Plan, therefore, there is no prospect for the Debtor to generate unencumbered income to pay holders of General Unsecured Claims other than through collection avoidance recoveries.

Based on these assumptions, the Debtor believes that holders of General Unsecured Claims would receive less than a 13% distribution on their claims, principally from potential litigation of avoidance actions against third parties.

### 12.19   *Tax Consequences.*

Implementation of the Plan may result in federal income tax consequences to holders of Claims and Interest holders. Tax consequences to a particular Creditor or holder of an Interest may depend on the particular circumstances or facts regarding the Claim or the holder of the Equity Interest. YOU ARE URGED TO CONSULT YOUR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

DATED:      January 29, 2019.

/s/ HOWARD MARC SPECTOR

**SPECTOR & JOHNSON, PLLC**
Howard Marc Spector
TBA #00785023
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
hmspector@spectorjohnson.com

COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION

Exhibit 1

1.     Claims under applicable non-bankruptcy law and Chapter 5 of the Bankruptcy Code against PRADA USA, Corp. and its affiliates.

2.     Claims under applicable non-bankruptcy law and Chapter 5 of the Bankruptcy Code against Deckers Brands and its affiliates.

3.     Claims under applicable non-bankruptcy law and Chapter 5 of the Bankruptcy Code against Moghi SRL, Elena Ghisellini, Daria Leonovska and their affiliates.

4.     Claims pursuant to Texas Tax Code sections 113.106 and 111.0102, to determine the validity of  state tax liens filed against TX Gregory's LV, LLC and NP Gregory's, LLC, for which the State of Texas seeks to hold Debtor liable.

<u>Exhibit 2</u>